UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TINA M. T.,[1]

                        Plaintiff,          **DECISION AND ORDER**

v.          6:20-cv-6757-JJM

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

        Plaintiff brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of defendant Commissioner of Social Security that she was not disabled. Before the court are the parties' cross-motions for judgment on the pleadings [12, 13].[2] The parties have consented to my jurisdiction [15]. Having reviewed their submissions [12, 13, 14], this action is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

## BACKGROUND

        The parties' familiarity with the 1445-page administrative record [11] is presumed. On January 19, 2017, plaintiff filed an application for Supplemental Security Income ("SSI"), alleging an onset date of December 1, 2015. Administrative Record [11] at 15. In her

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Page references to the Administrative Record refer to the page numbers reflected in the Administrative Record itself (bottom right corner of the page). Otherwise, page references are to CM/ECF pagination (upper right corner of the page).

application for benefits, plaintiff complained of a torn left rotator cuff, the inability to lift, post-traumatic stress disorder ("PTSD"), anxiety, hypervigilance, nightmares, major depression, sleeping issues, sciatica, shooting pains in left leg/buttock, and numbness in the toes. Id. at 186, 213.  Plaintiff's claims were initially denied. Id. at 82.

Administrative Law Judge ("ALJ") Alexander Klibaner conducted a hearing on July 29, 2019. Id. at 44-70.  Plaintiff appeared with an attorney representative. Id.  At the hearing, plaintiff testified that she had been fired from various previous employment due to attendance issues relating to her depression, anxiety, suicidal ideations, PTSD symptoms, substance abuse, and shoulder condition. Id. at 49-51. At some later time, she was hospitalized for depression and attempts at suicide. Id. at 52. She testified that she now stays home and sits on a heating pad due to her lower back issues, and does not go out more than necessary. Id. at 54-55. She was receiving periodic epidurals, which she testified helped for about a week. Id. at 55. She has a ruptured disc at L4-L5. Id. at 55. She testified that she had unsuccessful surgery on her left shoulder, and her shoulder still "pops out" when performing routine tasks. Id. at 56.

Plaintiff was treating at Jordan Health for her mental health issues and was taking medications including Prozac, Abilify, clonidine, and hydroxyzine. Id. at 57.  She struggled with sleeplessness and suicidal ideation, and some days she was unable to get out of bed. Id. at 58-59. She also experienced persistent anxiety, which was triggered by various everyday occurrences, as well as PTSD and fits of rage. Id.  At the close of the hearing, plaintiff's attorney confirmed to ALJ Klibaner that there was no opinion evidence in the record, despite their attempt to obtain some. Id. at 68-69.

ALJ Klibaner issued a Notice of Decision denying plaintiff's claim. Id. at 12-14. In his decision, ALJ Klibaner assessed plaintiff with the following severe impairments: lumbar

degenerative disc disease with radiculopathy; degenerative joint disease of the left shoulder, status post-rotator cuff repair; major depressive disorder; anxiety disorder; PTSD, and polysubstance use disorder. Id. at 17-18.  He found that plaintiff was moderately limited in her ability to interact with others, due to her anxiety, panic attacks, and anger issues. Id. at 20. He also found that she would be moderately limited in her abilities to concentrate, persist, and maintain pace; and to adapt and mange herself.  Id. at 21-22.

ALJ Klibaner reviewed plaintiff's treatment records dating from June 2012 to June 2019. Id. at 24-31. Early treatment during that period was concerned with plaintiff's diagnoses for depression, PTSD, and polysubstance dependence. Id. at 24, 707-48. In 2016, plaintiff was hospitalized after an intentional overdose. Id. at 25, 381. Further mental health and addiction treatment was noted on February 2016 and July 2016. Id. at 25, 268, 272.

Plaintiff sought treatment in December 2015 for shoulder pain, noting a 2009 shoulder surgery. Id. at 25, 298. No evidence of subsequent treatment for the shoulder was noted. Id. at 25.

In March 2017, C. Butensky, Ph.D., state agency psychological consultant, and D. Miller, D.O.,[3] state agency medical consultant, reviewed plaintiff's records and each found insufficient evidence to assess her claim due to plaintiff's failure to complete and return an activities of daily living worksheet. Id. at 75-77.  ALJ Klibaner gave "little weight" to these consultants' opinions because he felt subsequent evidence supported limitations in plaintiff's work abilities. Id. at 33, 36.

In August 2018, an MRI of plaintiff's lumbosacral spine was conducted, which showed a broad-based protrusion at L4-5 with "severe desiccation" in addition to other defects.

---

[3]     Drs. Butensky and Miller's first names are not indicated. Id. at 76, 77.

Id. at 26, 809. In September 2018, she complained of chronic lumbosacral pain primarily radiating down her left leg but also affected her right thigh, which was aggravated by standing and lifting. Id. at 26, 806. In September, her radicular leg pain was treated with nerve root blocks, which according to plaintiff improved her symptoms for a few days before they gradually returned. Id. at 27, 1052-53, 1070. In October 2018, another nerve block was administered which plaintiff reported gave her 50% sustained relief. Id. at 27, 1092, 1109. In treatment of her back pain, plaintiff took, at various times, gabapentin, diclofenac, and Tylenol. Id. at 31. She was also assessed with decreased range of motion and bony tenderness in her back. Id. at 32, 869.

In August 2018, plaintiff followed up regarding her addiction and anxiety and was put on Suboxone. Id. at 26, 1291. Plaintiff attended numerous further mental health treatment appointments relating to her anxiety, PTSD, and depression from October 2018 to June 2019. Id. at 27-31. She was continued on Abilify, Prozac, clonidine and hydroxyzine. Id. at 30.

ALJ Klibaner concluded that the record reflected that plaintiff had a "good response" to treatment of her back pain, and that, while she continued to experience thigh pain, her gait was normal. Id. at 33. He further noted plaintiff's lack of follow up regarding her complaints of shoulder pain. Id. ALJ Klibaner nonetheless limited plaintiff, in his residual functional capacity ("RFC") determination, to sedentary work in deference to these conditions. Id.[4] He further found that plaintiff's history of shoulder dislocation would also prevent her from climbing ropes, ladders or scaffolds, while her back pain would limit her to only occasional climbing of ramps and stairs, as well as occasional balancing, stopping, kneeling, crouching or

---

[4] Sedentary work is defined by the regulations as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §416.967(a).

crawling. Id.  Meanwhile, plaintiff's "potential of limited mobility" would require her to avoid unprotected heights. Id.

With respect to plaintiff's mental conditions, ALJ Klibaner found that plaintiff's addiction-related issues had improved with her current sobriety. Id. at 34, 36. He also noted that plaintiff had been able to sustain and persist in her medical and psychological treatment; that she had been assessed with appropriate thought processes, good concentration, and intact memory; and that she had traveled to Virginia and North Carolina in 2019. Id. at 35.  Nonetheless, ALJ Klibaner found that it would be "reasonable to expect that her psychological symptoms . . . would interfere with her ability her ability to remember and understand complex or detailed instructions". Id. at 36.  He accordingly limited plaintiff, in his RFC determination, to simple, routine, unskilled tasks. Id.

Further, while noting that plaintiff was generally able to concentrate and persist at tasks, he found that she experienced difficulty with attention span due to her anxiety, and therefore limited her to two-hour periods of work and simple work-related decisions. Id.  In deference to plaintiff's issues with anxiety, anger, and continued sobriety, ALJ Klibaner limited her to occasional interactions with supervisors and coworkers, occasional superficial interactions with the public, and occasional, simple changes to her work routine. Id.

## ANALYSIS

Plaintiff argues that ALJ Klibaner's RFC determination, with respect to both its physical and mental components, was not supported by substantial evidence because he improperly crafted them in the absence of any explicit medical source guidance regarding plaintiff's functional capacity. Plaintiff's Brief [12-1] at 6-11.  I agree.

    **A.**    **Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938); *see also* Biestek v. Berryhill, __ U.S. __, 139 S. Ct. 1148, 1154 (2019); Colgan v. Kijakazi, 22 F.4th 353, 359 (2d Cir. 2022) ("[a]lthough . . . the evidentiary threshold for the substantial evidence standard 'is not high,' . . . the substantial evidence standard is also not merely hortatory: It requires relevant evidence which would lead a 'reasonable mind' to concur in the ALJ's factual determinations").

An adjudicator determining a claim for DIB and/or SSI employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. *See* Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

    **B.**    **ALJ Klibaner's RFC determination was not supported by substantial evidence.**

It is uncontested that ALJ Klibaner crafted his RFC determination without having obtained any medical opinion evidence. *See* [11] at 68-69. The Second Circuit has held that "a medical source statement or formal medical opinion is not necessarily required", where "'the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity'". Monroe v. Commissioner of Social Security, 676 Fed. App'x 5, 8 (2d Cir. 2017) (Summary Order) (*quoting* Tankisi v. Commissioner of Social Security, 521 Fed. App'x 29, 34 (2d Cir. 2013)). "Accordingly, the issue is whether the record is clear[] and contains

some useful assessment of the claimant's limitations from a medical source sufficient to support the RFC finding." Williams v. Commissioner of Social Security, 366 F. Supp. 3d 411, 417 (W.D.N.Y. 2019); see also Muhammad v. Colvin, 2017 WL 4837583, *4 (W.D.N.Y. 2017).

Here, there is no such useful assessment of plaintiff's limitations in the record. While such evidence need not always take the form of a "medical source statement or formal medical opinion" (Monroe, 676 Fed. App'x at 8), here there appears to be no statement in the record - certainly none referenced by the ALJ - from a medical or other source articulating any specific functional limitation or addressing plaintiff's occupational fitness. Plaintiff was assessed with several serious conditions, including lumbar degenerative disc disease with radiculopathy; degenerative joint disease of the left shoulder, status post-rotator cuff repair; major depressive disorder; anxiety disorder; PTSD, and polysubstance use disorder; for which she was treated with nerve blocks and a handful of prescription medicines. In the face of these non-trivial diagnoses, the lack of medical assessment as to *any* limitation is an "obvious gap" in the record. *See* Jackson v. Kijakazi, 2022 WL 620046, *17 (S.D.N.Y. 2022) ("[t]he lack of a functional assessment from a source familiar with Jackson's [multiple, serious] impairments is an 'obvious gap' in the record"); Layton v. Commissioner of Social Security, 2020 WL 5366001, *2 (W.D.N.Y. 2020) ("[g]iven those serious medical issues, it is not at all clear how the ALJ was able to determine from the bare medical data that Layton would be able to perform [as indicated in the RFC]").

ALJ Klibaner seemed to recognize as much, assessing plaintiff, despite the lack of medical guidance, with a fairly restrictive RFC including only sedentary work, as well as restrictions on climbing and other activities. [11] at 23. At one point, he noted the "little evidence" in the record of plaintiff's limitations with respect to understanding, remembering, and applying information, before concluding that it was reasonable to assume her conditions would

meaningfully interfere with such ability. Id. at 36. I agree that it is reasonable to assume that plaintiff's conditions would entail some limitations on her ability to work. Nonetheless, because the record medical evidence is silent on the existence and extent of those limitations, ALJ Klibaner's RFC determination is unsupported by substantial evidence and cannot stand. See Thomas v. Commissioner of Social Security, 2019 WL 2295400, *2 (W.D.N.Y. 2019) ("[a]ll of the records in the case consist of clinical notes that have no medical source statements and no other assessments of plaintiff's exertional and non-exertional abilities. The Commissioner also did not employ a consultative examiner. Nonetheless, the Commissioner crafted a very specific RFC that included references to ladders, ropes, and scaffolds. The raw clinical data in this case might turn out to be consistent with an RFC like the one created here. Nonetheless, the absence of a properly grounded RFC constitutes legal error that requires remand").

   The Commissioner correctly points out that plaintiff bears the burden to demonstrate the existence of a severe impairment, or combination of impairments, that prevent her from performing substantial gainful activity. See 20 C.F.R. §404.1520; Poupore v. Astrue, 566 F. 3d 303, 306 (2d Cir. 2009). I also note that plaintiff's failure to cooperate with the state agency consultants contributed to the lack of opinion evidence. See id. at 75-77.

   However, "[b]ecause a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record". Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996). Accordingly, it remains the "general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations, [that] to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing". Nanartowich v. Commissioner of Social Security

Administration, 2018 WL 2227862, *11 (W.D.N.Y. 2018). Accordingly, "[the ALJ's] failure to request a functional assessment when no such assessment exists in the record or when any such assessments are insufficient constitutes a failure of his duty to develop the record." Jackson, 2022 WL 620046, at *17.

The ALJ also has the obligation to produce a decision that is supported by substantial evidence and susceptible of meaningful review. "With no medical source statement, consultative examination report, or other opinion evidence from the relevant period providing physical functional limitations, [it] is unclear how the ALJ assessed Plaintiff's physical capacity for work-related activities." Dean C. v. Commissioner of Social Security, 2021 WL 1558401, *7 (W.D.N.Y. 2021). As the courts routinely hold, a lay ALJ "is not qualified to assess a claimant's RFC on the basis of bare medical findings", and "where the medical findings in the record merely diagnose the claimant's . . . impairments and do not relate those diagnoses to specific residual functional capabilities . . . [the ALJ] may not make the connection himself". Perkins v. Berryhill, 2018 WL 3372964, *3 (W.D.N.Y. 2018); see Nelson v. Commissioner of Social Security, 351 F. Supp. 3d 361, 369 (W.D.N.Y. 2018). Where an ALJ proceeds without the support of a credited medical opinion, he or she is generally limited to making "common sense" assessments about a claimant's functional capacity. See, e.g., Stoeckel v. Commissioner of Social Security, 2019 WL 5445518, *2 (W.D.N.Y. 2019); Ippolito v. Commissioner of Social Security, 2019 WL 3927453, *4 (W.D.N.Y. 2019).

Finally, I note that "[a]n ALJ's decision to formulate an RFC without specifically crediting medical opinion evidence of record is particularly fraught with peril in the context of disability based on mental illness." Kiggins v. Commissioner of Social Security, 2019 WL 1384590, *5 (W.D.N.Y. 2019); see also Stoeckel, 2019 WL 5445518 at *2 ("[c]ourts . . . remain

'wary of permitting an ALJ to use common sense to assess mental limitations, which are by their nature highly complex and individualized'").

## CONCLUSION

For these reasons, plaintiff's motion for judgment on the pleadings [12] is granted to the extent of remanding this claim to the Commissioner for further proceedings consistent with this Decision and Order, and is otherwise denied, and the Commissioner's motion for judgment on the pleadings [13] is also denied.

**SO ORDERED**.

Dated: September 7, 2022

/s/ Jeremiah J. McCarthy
Jeremiah J. McCarthy
United States Magistrate Judge
